Good afternoon. Christopher Nelson for the whistleblowers. May it please the court, I'd like to reserve two minutes for rebuttal. They're really relators, aren't they? They are the relators and whistleblowers, both, Your Honor. In this case, which was dismissed over a year before Johnson & Johnson filed the subject motion to unseal, the whistleblowers have given the company a full document production, they've sat for depositions, and they're willing to consent to provision of the How public is this information? It's not public, Your Honor. There were two instances to which the appellees have pointed, as well as the district court's conclusion regarding the identities of the whistleblowers and whether they're in the public domain. Is Alexis in Bloomsburg? They were temporarily available, or rather the original docket, which contained their real names, was temporarily available and accessible. It's no longer searchable? Not to my knowledge, Your Honor. How about everything that's happened in the New Jersey action? Is that all under seal? No, Your Honor. There are declarations which were filed by two individuals in the New Jersey action under their real names. However, there is, and I hope you'll forgive me for being careful in the way that I say this, there has been no disclosure and there has been no association of the names of the declarants in the New Jersey action with the names of Jane Doe and John Doe in this action. But it was sufficiently public that Jansen was able to see and verify who these people were, right? Jansen believes that they have verified who these individuals are. However, I believe that that conclusion necessarily requires, or rather, I suppose it doesn't matter, at least to the whistleblowers, or rather it matters to the whistleblowers, that the situation or the circumstances in which their names were temporarily disclosed on a docket was due to no fault of their own. That was due to an error by the court clerk. What is the difference between, presumably the declarants in the New Jersey action have testified, in essence, to the same things that are alleged in the instant complaints. Is that not correct? It is correct. And what is your objection to having their names disclosed here? Our objection to having the names of the Doe-relators in this case associated with or disclosed in connection with the declarations that were executed and filed in the New Jersey case springs from the manner of the disclosure. It's a very different situation to be, and this sort of goes back to the court's direction about us proposing a proper standard in a letter we received from the court last week, but the difference between those situations arises from the fact that there is a fundamental difference between someone who serves as a whistleblower, which would be the instance with respect to Jane Doe and John Doe, and someone who testifies in connection with an action that has already been unsealed and they have been requested to testify in that action. Can I ask a question about tags here? You say whistleblower. They're relators in a QI-TAM action, correct? They were relators in a QI-TAM action. They were relators in a QI-TAM action. And whistleblowers are forever protected. But relators, the only protection in the seal that you have by law is for the government to investigate. There's no right to continued anonymity for a relator, is there? Actually, the statute's silent on the question of continued anonymity. Okay. It is silent, but it doesn't give anonymity, whereas whistleblowers are given anonymity. Isn't that correct? I would not necessarily make the legal distinction between a relator and a whistleblower. I've always used the terms interchangeably. But the question that's being put to you is, even if you wouldn't do it, there are statutes to protect whistleblowers, and there is a statute associated with QI-TAM actions, and the whistleblower statutes provide for continued anonymity, and the relator statute, the QI-TAM statute, doesn't. It does not. That's the point, right? It does not provide for that. Okay. However, can you help us with another thing? Just as a factual matter, when you say, as a matter of fact, this information is in public, it's a fact that the amended complaint with the names mask is still filed pseudonymously. That is in the public record, right? It is. And it's also a fact that the New Jersey action has the affidavits publicly available. Isn't that right? That's correct. And the court said that the statements in the New Jersey affidavit and the statements in the complaint were very largely effectively the same. Is that an accurate statement? I think they were very effectively the same. I think you can set them. So if it's true that the complaint and the affidavits are functionally the same and the name is on the affidavits which are publicly filed in New Jersey, how is it anything other than the most elementary step to know, oh, those are the relators? Because there are many individuals who could have accessed the amended complaint and submitted declarations. There are many individuals and witnesses in the case that experienced the same type of conduct that is alleged in the amended complaint. So I don't believe that there's necessarily a direct connection between the affidavits in the New Jersey case and a DOE filing in the Eastern District. You've asked us to make an assessment of harm, right? Yes. I mean, whether we're under the MEGLAS standard or we're under the unsealing standard, harm is a question that is addressed. It's like the harm to the person who bears the burden, which is your clients, right? Yes. Okay. Even if you couldn't say with dead certainty, oh, it's them, if you could say with a high degree of confidence, well, those allegations look exactly alike, does that not affect the calculus of harm? I think it does affect the calculus of harm, but there's an additional factor that needs to be considered here. We are not before the court to argue, or rather before the district court, it was not argued the question of sealing or unsealing versus the relative harm. That question wasn't considered by the court. What was considered by the court was when relators who have approached the court and requested that their original complaint remain under seal, which they did, and if their original complaint remains under seal and they file an amended complaint pseudonymously with the same allegations, is the court willing to allow them to remain anonymous? And they dismissed their case in reliance on the district court's decision to allow them to remain anonymous. Well, I understand that you think Meglis was the wrong standard to use, but it seems inaccurate to say that the district court didn't make an assessment of harm because Meglis asks the question, can you show a definable and a distinct harm, right? It certainly does. However, what Meglis doesn't ask is whether a relator or a plaintiff who relies on a district court's assurance of anonymity, provided that they dismiss their case, who actually goes ahead and then dismisses their case. I'm glad you said that because I was reading your reply brief at page four, and you say, quote, here relators voluntarily dismissed their case with the understanding that they would be permitted to remain anonymous if they did so, and the district court ordered as much, and you cite A-9. I go and look at A-9, and it's a docket sheet. Who led you to believe, or your clients to believe, that if they dismissed the case, they would forever remain anonymous? Your Honor, without breaching privilege, that was my understanding from prior counsel who prosecuted the case as well as the individuals in this case. Well, the district court certainly didn't order that, right? The district court, there's nothing on the record, or I presume we would have seen it, where the district court said dismiss your case and you will remain anonymous. I don't believe that is on the record. That's as close as we're going to get to it. How do you succeed under whatever balancing test you think is appropriate? That's what it's going to be. Whether it's Meglis or whether it's ascendant, there's a balance. Whether it's the public right of access, and most of the cases, public right of access in identity or whatever trumps everything else. How do you do better than other cases in terms of the balance? Certainly. I think fundamentally, and again, I hope you'll forgive me for going back to the whistleblower word, I believe that courts have recognized across the country that there are substantial harms which are suffered by relators in economic and both personal and economic realms. But all the cases talk about the vagueness of those harms and the fact that they're not sufficiently specific. You can't just say, well, there are harms. Okay, let's assume there's some harm over here, but it's not specific enough. Okay, well, the court had asked us in that letter, the court directed us in that letter to provide some case law. And prior to coming in for oral argument, I went through and did a survey of a number of courts, and I've identified one, two. Well, we wanted you to say which test applies and how you fare. Well, I suppose the problem is that I don't think there's a test out there for a discontinued case. What tests are out there talk about instances where whistleblowers or plaintiffs who intend to proceed with their case have cited economic harm as a basis for hiding their names from the general public. And courts appear to have not universally but regularly concluded that when a relator or when an individual with an interest in preventing economic harm to him or herself says to a court, I'd like to go forward with this case anonymously, and the court responds and says, well, how's the defendant supposed to be able to defend himself if he doesn't know who you are? How's the public supposed to find anything out about this case if they don't know who you are and what your allegations are? And there's a difference between proceeding under seal with respect to the entirety of the case, the allegations, the complaint, the subject matter. And what we're talking about here where they dismiss their case and everything they have alleged is available to the public for its review. Is reputational harm the same as economic harm? I don't know. I would argue that they're both two slightly different types of harm because one hits your pocket, one hits your standing in the community. From a reputational standpoint and from an economic standpoint here, however, I'm not certain that there is a functional difference in the result here because if the real names of the relators in this instance are published to the public by Janssen or on the docket, they will almost certainly not work again within their chosen field. Let me ask you about something you point to in your brief but you haven't really mentioned. I'm going to quiz your opponents on this, and that is their motivation. Yes. The appropriate motivation because all of the complaint is out there. All of the allegations of the complaint are out there. The only thing that is not in the public domain is two names. Correct. And query why they are coming in a year after the case is over and asking that these two names be disclosed. That's correct, Your Honor, and we have not been granted an answer to that question. Just to give the Court a bit of procedural history, from the moment that I became involved in this case, which was about a year after it was dismissed, we have offered Janssen everything they want. They served deposition subpoenas on my clients, and we sat down, and they were deposed. They requested a full document of production. We gave it to them, and they said, no, that's not enough. We want your consent to unseal the original complaint. When you say unseal the original complaint, it's really unseal their names. Unseal their names, correct. Because everything else is out there. Yes, and publish them on the docket, their real names, and they said, no, they have to come out there. And I said, well, why is it impossible for us to provide, why can't we provide those names to you subject to a confidentiality or given the facts of this case and the procedure and the posture that it's in? And we have not gotten a response, and that leaves us. They never answered that question. They won't answer that question. They have not answered that question to us. They've given us a vague response about it would be a little more difficult. It could be hard to keep it under seal, and we recognize that fact, certainly. But we don't believe that having to file a document under seal here and there represents the kind of substantial burden that would justify outing the relators to the public. What's the standard of review were to apply in considering the district court's decision that this should be unsealed? When we look at Judge Quinonez Alejandro's decision, is it abuse of discretion? It's abuse of discretion as to consideration of the question of, let's assume, well, let me back up for a moment. You know, whether to apply megalis or not would obviously be law, but in application of whatever test is actually applied, whether it's megalis or something else, it's certainly abuse of discretion. Yeah. I mean, it's a bit of a mixed question. But as to the question of the standard, we still haven't heard from you what you think the standard should be. Certainly. What I would propose as a standard, given that we're dealing with a dismissed case, is that a whistleblower or a relator, functionally the movement, would be in a position to allege a reasonable basis to keep his identity private in a dismissed case, such as the fear of blacklisting, which a host of courts have recognized is a substantial enough harm to warrant sealing, and that the person seeking publication of the whistleblower's real name must show a legitimate and non-punitive public interest in a factor issue that can only be served or discovered through the revelation. You'd put a burden of proof on them when all the other standards have the burden of proof on the person? No. No, I think we would have to prove or allege, as a preliminary matter, that they have a reasonable fear of retaliation. Right. But you, as an added thing, want them to have to prove something. I think they'd have to show some need to overcome that once we've made our shelling. Okay. And that would be as to the identity of the relators when everything else has been, is public record? When everything else is public record or has been provided to the person seeking to unseal. So it's still a balancing of harms test that you're proposing? It does have to be, but I would remove the specificity of many of the negligence factors because they simply don't apply in a case that's been discontinued. Thank you. And this, you're proposing a test that should be generally applied with relators? No, I'm proposing a test which should be applied to a case where a relator has dismissed their case. Yes, I understand. Yes, I'm not proposing. It should be a general rule. I would like it to be a general rule. Under this fact situation. Yes, under this fact situation, yes. I believe that's all. Thank you. Good afternoon, Your Honors. May I please correct my colleague, Mr. Nelson? The starting point for this is the common law presumption of public access to judicial records. There is no. Well, yeah, there is that as a starting point, but why don't you start by answering the question, why do you want this on the record? You've heard Mr. Nelson saying we read it in the briefs. We're giving them everything they want, but what they really want is this out in the public. They don't want to know who it is. They want the world to know who it is, and there's only one reason for that. They have a punitive, bad faith motive wanting to extract a pound of flesh from these people. So that's the question you ought to start with. That is not what the record has shown in this case. And just to clarify, Mr. Nelson has offered several times to make the original complaint available to us under the seal of the case. We have the original complaint. We don't have the original complaint. But you have all of the allegations. You know exactly what it says, other than the identity. And you know the identity of these people, right? We do. We do, Your Honor. The situation we're faced with is we have now deposed the two relators. We have asked them questions based on their declarations, and Mr. Nelson said that anyone could read the amended complaint and pick up those allegations and put them in the declaration. The Doe relators have attested under oath that those allegations, which are verbatim from the amended complaint that are now dropped into their declarations, are based on their personal knowledge, so there's no question of that. But we can ask them about a paragraph in their declaration, but we can't ask them about a paragraph that's in the amended complaint that's been omitted from the declaration because of the seal of the case. You can, because he's told you, we'll do that. All we want is a confidentiality agreement. I take their position to be we'll go into a deposition with you tomorrow under a confidentiality agreement, and you can ask them all that stuff. So that doesn't wash. What is it you really want, and why? What we want to be able to do is to question the relators freely without having to go through the burdens of confidentiality when they have not taken any steps to protect their identity. We have, but counsel instructed them, and on the advice of their counsel, they refused to ask questions about why they brought the EDPA complaint, about the allegations that were initially made. What does the outing of their names have anything to do with anything? Because they put their credibility central to the New Jersey case. They have said that these allegations are their personal belief, and their credibility is now central to this New Jersey case because they're one of five witnesses that supported the relators' claims. When they went to the government, and when they filed their Pennsylvania complaint, they knew they stood to gain a great deal of money if they were successful. So that motivation of why they went to EDPA, why I'm sorry to interrupt, Judge, and I stop if you want, becomes central to what their motivations are to be witnesses voluntarily and publicly in New Jersey. So why, how does the unsealing of two names do anything for you other than punish them? Well, there's no punishment here, Your Honor, and if there was a punishment. Well, I still don't understand. How does the unsealing of their names give you credibility, bias, motivation? How does that do anything? Because we can ask them why they filed the complaint in Philadelphia to begin with, why they went to the government. You could do that under a confidentiality agreement. The whole of your case depends on the assertion that this confidentiality agreement is an undue burden on you, right? It is an undue burden on Jason, and it's a burden that's not ours. Before you go further, am I right that that's the whole of it? You don't have anything other than that, do you? For our position on why providing us the original complaint is not enough under a confidentiality order, and I would say that the confidentiality order in place in New Jersey, which relators have not availed themselves of, does not cover this situation. It would have to be a separate agreement that we would reach, and that's not necessary. Let's assume for the sake of discussion that smart counsel working in good faith together could reach a confidentiality agreement, okay? Let's just take that as a given. You have a confidentiality order in place. You could ask them all the impeaching questions you want. Why isn't that enough? Why doesn't that satisfy you completely? It would, Your Honor, except this is not our burden. The relators here have this burden. We're sort of past in our questioning of you. We understand where the burden of proof lies. We're trying to get at one of the elements in the Meglis test that you say is correctly applied, which is your good faith, okay? So that's what we're working with right now. So please don't say they have the burden. We know that. The question is about your good faith. If you've got everything you need under a confidentiality agreement, everything you need, what do you have to lean on to say this is wrong, other than it's just hard for us, this confidentiality agreement? That's the whole of it, right? I wouldn't say it's just hard for us. It is that the Doe relators have made themselves and their credibility and their motivations central to this New Jersey case. We've just taken that off the table, haven't we, Ms. Hazlitt, by saying you can ask them all the impeaching questions you want about that. You can beat them over the head with that until the cows come home. It's just that the rest of the world doesn't have to know that. You get to ask it, and the fact finders in court get to know it, and the judge gets to know it, all under a confidentiality order. We're taking that as the premise of our discussion. So I guess it's kind of a yes or no question. I think I've got the answer, but I just want to make sure. Other than the fact that you say, well, that puts a burden on us to have to operate under a confidentiality order. That's it. You've got nothing else, right? Correct. There's a burden on us, and there's no evidence that this was done for retaliation. And when you look at the megalospectrum. They're actually saying there is evidence because of the conversation we've just had. They say we've offered them everything, and that's not good enough. They don't want everything. They want the world to know, and there's only one reason for that. The only inference possible from that is it's a bad faith punitive desire, a desire to punish these people in the public so that they're unemployable in the industry again. Can you give us another inference that we can draw? If it's, in fact, the case that you get everything you want, what's the other inference to be drawn? I think the other inference to be drawn is that Janssen has an absolute right to defend itself in New Jersey, and that is to publicly try this case. The allegations against Janssen, it's defenses that they are advancing. And the relators in EDPA have made the decision that they want anonymity in one court but to publicly hold themselves out in another. But they're not anonymous in New Jersey, and they're saying exactly the same thing. So how – it just doesn't wash. It doesn't pass the smell test of why this has to be added to the world. And you say you don't have the burden. Well, you come in a year after the case is dismissed and say unseal it. It's a very different procedural posture. I understand, Your Honor. And I think that that timing actually speaks to the fact that this isn't retaliation because we did not take steps to – the docket reported the names of the relators' counsel. At that time, when the case was originally unsealed, the amended complaint – I thought it was going away. The New Jersey case? No, the case here. Well, perhaps. But we're still defending the exact same allegations in New Jersey. And the docket announced their identities. We took no steps to unseal the original complaint. When we took steps to unseal the original complaint – and I know there is a finding at the district court that the allegations in the original complaint, except for the identity of the relators, are the same. I don't take issue with the judge's sort of finding on that. We have not had the advantage of seeing the original complaint, however, and it wasn't until they voluntarily and publicly picked up verbatim the allegations in the amended complaint, dropped them into a public declaration, produced documents set for deposition testimony, where they have taken no steps to protect their anonymity. Did you ask them the questions in the deposition, putting the complaint side-by-side with the declaration, and say, is this you? No, Your Honor, because they were instructed by counsel not to answer those questions because of the seal. I asked them whether you asked the question, not whether there was an instruction not to answer. I can't recall whether I had that explicit question, but as questions approached issues that may reveal them as the relators in EDPA, they were instructed by their counsel not to answer the question. Isn't it sort of incumbent on you, if you're going to make the argument that this is already out there public, to make the case that it's already out there public by asking that question? Yes, Your Honor, but it is public because the amended complaint and the declarations are verbatim paragraphs. They are not completely verbatim, but they are verbatim paragraphs. Then you go to the supervising judge in New Jersey and get an order for them to answer those questions. I'm sorry, could you repeat that, Your Honor? And if counsel instructs them not to answer, you go to the supervising judge in New Jersey and ask for an order requiring them to answer. Yes, Your Honor, however, there's the seal in place in Pennsylvania that limits the ability for us to ask them questions about being the relators in EDPA. I don't know how that would be the case. I think it's the notoriety and the being out there publicly that you're after, and you're not going to be satisfied with an order from the supervising judge that tells them. I don't think they're going to have a leg to stand on if you say that the seal in Pennsylvania is preventing them from that. And it's not a seal in any event. It's an amended complaint filed with the name Doe. There is no seal. Correct, but the entire docket before that amended complaint, including the government's request for extension of time, remains under seal to this day. I think you're going to win in New Jersey if you ask for an order to compel. At the end of the day, your claim is it's not fair for them to punch us secretly in Pennsylvania and then punch us publicly in New Jersey and not acknowledge that they're the same people punching us in both places. Is that right? Yes, Your Honor. I think that's a simplification, and is an accurate way of describing it. However, what we really are trying to get at is why they punched us in Pennsylvania, why they're punching us in New Jersey, and why there are differences in what their motivations were for bringing that original suit in Pennsylvania. Yeah.  I'm sorry. Go ahead. No. Tell us, though, how you will be unable to ask those kinds of questions and only knowing who they are. Right now, with their identities being under seal, we're limited in what we can ask. Does that answer your question, Your Honor? Well, can you be more specific? Right now, we have reason to believe that we know who the deal-relators are in EDPF. We think they are the very same people who have submitted voluntary, non-confidential declarations in New Jersey, who have sat for depositions in New Jersey where they've made substantially the same allegations that their amended complaint. But we cannot ask them, are you the deal-relators in Pennsylvania? And if you are, why, if at all, or how, if at all, have your allegations that you filed in Pennsylvania, that you took to the government when you were seeking a bounty, have changed from then to now when you voluntarily and publicly inserted yourself in a case in New Jersey? You say you can't ask them that. You say counsel has instructed them not to answer. But why would not you go to the supervising judge in New Jersey and force the answer? And that judge would have to say, yes, they have to answer that question. Your Honor, that is certainly one route that you could take. And that's a route whereby their notoriety is not known to the world. Is that a satisfactory route to you? Well, I don't know if that would necessarily be true, because if they answer in a deposition and we ask those questions at trial, their identities would become known. But it's not going to be searchable the way their names are going to be searchable. That you are correct in that. And, you know, certainly could we have pursued this in New Jersey? Procedurally, there may have been a route to do that. However, coming back to the court that weighed the megalis factors that consider the original motion to seal, we thought was the most efficient way, because she had, Judge Quinones Alejandro, had balanced the megalis factors and found that they weighed in favor of unsealing. Speaking of procedure, you weren't a party? We were not, Your Honor. You didn't move, you didn't file a complaint to unseal? We did not, Your Honor. You didn't file to intervene? You just sort of showed up off the street and said, do this. Isn't that problematic? Your Honor, I think we certainly are not contesting that we were a party. We were never served with a complaint, so we were not a party. There was no active case, so I think that there was not a route for us to intervene because the case was not pending. We've got case law that says what the route is. It says if the case is closed and you want to get at something, file a complaint, file a miscellaneous action. True. There are cases that say that may be the proper route to do this, although our position is that because this had been considered by the court, because there was a route to challenge the decision by the court that that was the most efficient way to do it and to bring another claim would have been a formality that was needless and would have been a good use of resources. Well, we kind of like formalities, right? I mean, they tend to behave themselves and they only get into court and get things that they deserve, and that's why we don't just let people wander in and say, I want something. They have to file a formal document and jump through the hoops. If you haven't done that, is it a needless formality to tell the district court, look, you can't just let people come in and say they want things, make them make their case. Should we make it go back and make your case in front of the district court? Your Honor, I would argue that we are not someone just off the street. We were a named defendant. We are defending against these very same relators, their allegations in New Jersey. And if you look at the Rittenhouse Hotel case, we think we're pretty similarly situated to the third-party contractor who used the same procedure to get at judicial records when they were defending themselves in another case. Do you think that no matter what we do in this case, there would be any collateral consequences in the New Jersey action? With respect to your being able to ask the kinds of questions of the relators that you've mentioned here. So without relief from the court, I don't know where that exactly would leave us. Without, I'm sorry, without finality on this decision, on what the appeal has come out, I'm not sure where that would leave us. Mr. Nelson has said in the past that he would, subject to some confidentiality order, make his clients available to answer questions. That's something I would have to talk further with him, depending on the outcome of this, of whether that offer is still available. And I think it also means you could ask the pertinent questions and make the pertinent case to the district court if there were an instruction not to answer. But, okay, but we've got the position. Thank you very much, Ms. Hazlett. Appreciate your argument. Mr. Nelson, your rebuttal. Thank you. To be absolutely clear, it is our position that Johnson & Johnson can depose the individuals. In this case, again, we're willing to do that. Right. We understand that. I guess what I'm most interested in is what your opponent emphasized repeatedly, and I'd like you to answer again if you would. Since there's an abuse of discretion standard here, and the district court thoughtfully balanced the harms and said, look, there's enough information out there that you're effectively public. People can figure this out. And this is a public forum. So that's, you know, and you're the ones who chose to file in your own name to begin with. I mean, none of this would have happened if you hadn't chosen to file in your own name to begin with. So you made your bed. You can lie in it. Where's the abuse of discretion in that? The abuse of discretion is in permitting the sealing of the original complaint in exchange for filing an amended complaint with the Doe names on it. You had the court. There was no exchange. Hold on. You make it sound like you were making a deal with the district court. You moved. So I read the record, not you personally. Yes. But your clients moved because maybe it kind of occurred to them, hey, wait a second. Why did we file in our own name? For whatever reason, they decided they wanted to file a pseudonymous complaint, and the court allowed them to do that. It wasn't like, you know, there was a quid pro quo. Okay. There's nothing in the record to support a reliance on that. And it's something that could not be guaranteed by a trial court anyway. It's something that could not be guaranteed, but had the district court denied that motion, they would have been in a position to decide to proceed with their case under their own real names, and that's really kind of the crux of what our issue is here, is that had that motion not been granted, they very well may have elected to proceed with their case, have their names come out, and litigate the substantive case. At this point, they can't do either. Well, they have decided to get into the New Jersey action, which is why I guess we're back here. Okay. Thank you very much, Mr. Nelson, Ms. Hazlett. We've got the case under advisement, and we will recess court. Thank you.